UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ANTHONY VINCENT ABEYTA,

Petitioner,

v.

ROBERT LEGRAND, et al.,

Respondents.

Case No. 3:12-cv-00251-MMD-VPC

ORDER

This *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by state prisoner Anthony Vincent Abeyta is before the Court for final disposition on the merits (dkt. no. 8). Respondents have answered the petition (dkt. no. 24), and Abeyta replied (dkt. no. 27).

## I.    PROCEDURAL HISTORY AND BACKGROUND

On February 3, 2010, Abeyta pleaded guilty to one count of attempted murder with the use of a deadly weapon (exhibits to respondents' motion to dismiss, dkt. no. 14, exh. 36).[1] The state district court sentenced him to two consecutive terms of five to twenty years. *Id.* The Nevada Supreme Court affirmed his convictions on November 5, 2010. (Exh. 53.)

On June 16, 2011, Abeyta filed a proper person postconviction petition for a writ of habeas corpus in state district court. (Exh. 63.) Following an evidentiary hearing, the state district court denied the petition. (Exhs. 74, 83.) The Nevada Supreme

---

[1]The exhibits referenced in this order are exhibits to respondents' motion to dismiss (dkt. no. 14) and are found at dkt. nos. 15-18.

Court affirmed the denial of the petition on April 11, 2012, and remittitur issued on May 8, 2012. (Exhs. 98, 100.)

Abeyta dispatched this federal petition for writ of habeas corpus on May 7, 2012 (dkt. no. 8). Respondents have answered the remaining grounds (dkt. no. 24).

## II.   LEGAL STANDARDS

### A.   Antiterrorism and Effective Death Penalty Act (AEDPA)

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

2

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

> *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

**B.    Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have

4

pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to

1  incompetence under prevailing professional norms, not whether it deviated from best

2  practices or most common custom." *Id.* (internal quotations and citations omitted).

3  　　　Abeyta pleaded guilty upon the advice of counsel, thus he "may only attack the

4  voluntary and intelligent character of the guilty plea by showing that the advice he

5  received from counsel was [ineffective] . . .  and that there is a reasonable probability

6  that, but for counsel's errors, he would not have pleaded guilty and would have insisted

7  on going to trial." *Hill*,  474 U.S. at 56-57, 59; *Lambert*, 393 F.3d at 980-981.

8  **III.　　REMAINING GROUNDS IN THE PETITION**

9  　　　With the exception of ground 10 — set forth below — Abeyta's remaining

10  grounds are all claims of ineffective assistance of counsel in violation of his Sixth and

11  Fourteenth Amendment rights.

12  　　　**A.　　Ground 1**

13  　　　Abeyta claims that he did not enter his guilty plea knowingly and voluntarily due

14  to ineffective assistance of counsel (dkt. no. 8 at 4-8). Specifically, he contends his

15  counsel (a) failed to file a petition for writ of habeas corpus after his preliminary hearing

16  and (b) failed to file a motion to suppress the testimony of Kelly Mitch. *Id.* To the extent

17  that federal habeas review of this ground is not foreclosed by *Tollett v. Henderson*, 411

18  U.S. 258, 267 (1973), it is frivolous and patently meritless, and the Nevada Supreme

19  Court's disposition of this claim is not contrary to, or an unreasonable application of,

20  clearly established federal law.

21  　　　The Nevada Supreme Court affirmed the denial of this claim, stating:

22  　　　　[A]ppellant claimed that trial counsel failed to file several motions and a
23  　　pretrial petition for a writ of habeas corpus challenging the sufficiency of
　　　the evidence presented at the preliminary hearing. Specifically, appellant
24  　　claimed that none of the witnesses testifying at the preliminary hearing
　　　saw a weapon being used to cut the victim's neck, there was no evidence
25  　　of malice aforethought, and no evidence that the victim almost died.
　　　Appellant failed to demonstrate that his trial counsel's performance was
26  　　deficient or that he was prejudiced. A magistrate's duty at the preliminary
　　　hearing is not to determine the guilt or innocence of the defendant but
27  　　rather to determine whether probable cause has been presented that a
　　　crime was committed and that the defendant committed the crime;
28  　　probable cause may be based on slight or marginal evidence. NRS
　　　171.206; *Parsons v. State*, 116 Nev. 928, 933, 10 P.3d 836, 839 (2000).

1
2

> Appellant failed to demonstrate that the State did not meet its burden of establishing probable cause to bind appellant over for trial. Therefore, we conclude that the district court did not err in denying this claim.

3  (Exh. 98 at 2-3.)

4   As the Nevada Supreme Court observed, to demonstrate probable cause to
5  bind a defendant over for trial in Nevada, the State must present only "slight, even
6  marginal evidence" that crimes were committed and that the defendant committed them.
7  *Clay v. Eighth Judicial Dist. Ct.*, 305 P.3d 898, 906 (Nev. 2013) (citing *Sheriff v. Hodes*,
8  606 P.2d 178, 180 (Nev. 1980)).

9   The state-court record reflects the following: Daniel Georgescu testified at the
10  preliminary hearing that about 8:30 p.m. on September 2, 2008, he drove his car, with
11  Gilbert Trujillo riding in the front passenger seat, to a Wendy's restaurant in Las Vegas
12  to pick up a person named Kelly Mitch. (Exh. 4 at 5-8.) Georgescu identified Abeyta as
13  the person who was there with Mitch when they arrived. (*Id.* at 8-9.) Mitch got in the car,
14  the doors to the vehicle locked, and then she told Georgescu to drive away. (*Id.* at 9-
15  10.) Abeyta then reached through the front passenger window, placed his fist against
16  Trujillo's neck, and pulled it across the neck. (*Id.* at 10.) Trujillo began bleeding. (*Id.*)
17  Georgescu drove away and took Trujillo to a hospital. (*Id.* at 11-12.)

18   Gilbert Trujillo testified that after Mitch entered the vehicle, he thought Abeyta
19  struck him in the neck. (*Id.* at 20-23.) As Georgescu drove away, Trujillo saw blood on
20  his shirt and put his hand on the wound to apply pressure during the drive to the
21  hospital. (*Id.* at 23-24.) At the hospital, the doctors performed exploratory surgery to
22  determine whether the laceration had caused any nerve damage, and he received
23  fourteen staples, which left a four-inch scar on his neck. (*Id.* at 25.) Trujillo testified that
24  he had had numbness in his neck since the date of the attack. (*Id.* at 26.)

25   Kelly Mitch testified that she was extremely intoxicated at the time of the
26  incident, but remembered seeing Trujillo and Georgescu arrive to pick her up in the car
27  and remembered entering the vehicle. (*Id.* at 37-38.) She testified that she had been
28  ///

7

1   arguing with Abeyta that day. (*Id.* at 41.) She testified that after they drove off, Trujillo

2   was bleeding. (*Id.* at 42.)

3          Abeyta has failed to demonstrate that the Nevada Supreme Court's decision

4   was an unreasonable application of *Strickland*. While no witness testified to seeing a

5   weapon, the testimony that Abeyta ran his fist along Trujillo's throat and caused serious

6   bleeding and a large laceration certainly provides slight or marginal evidence to prove

7   Abeyta used a knife or other unknown sharp object and acted with malice.

8          Moreover, while Abeyta alleges that counsel should have moved to suppress

9   Mitch's testimony, he provides no explanation as to the basis for such a motion or any

10  further factual allegations related to this claim whatsoever.

11         Abeyta has therefore failed to demonstrate that the Nevada Supreme Court's

12  decision is contrary to, or involves an unreasonable application of, *Strickland*, or was

13  based on an unreasonable determination of the facts in light of the evidence presented

14  in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to

15  ground 1.

16         **B.    Ground 2**

17         Abeyta asserts that his counsel was ineffective during sentencing because he

18  never inspected the presentence investigation report for inaccuracies and failed to

19  object to inaccuracies during sentencing proceedings (dkt. no. 8 at 14-16). The Nevada

20  Supreme Court affirmed the denial of this claim, stating:

21             [A]ppellant claimed that trial counsel failed to investigate the
           presentence investigation report for inaccuracies and challenge those
22         inaccuracies. Appellant failed to demonstrate that trial counsel's
           performance was deficient or that he was prejudiced. Trial counsel
23         testified that he reviewed the presentence report before sentencing.
           Appellant, himself, corrected one of the inaccuracies at the sentencing
24         hearing, and appellant acknowledged his extensive criminal history at the
           sentencing hearing. Trial counsel testified that some of the alleged
25         inaccuracies identified were factually correct and that he did not object to
           others as it would emphasize the criminal history. Appellant failed to
26         demonstrate that there was a reasonable probability of a different outcome
           had trial counsel done further investigation into the accuracy of the
27         presentence investigation report. At the conclusion of the hearing, the
           district court observed that the alleged inaccuracies were actually factually
28         correct or that trial counsel made a strategic decision not to challenge the

8

inaccuracies and emphasize the lengthy criminal history. Therefore, we conclude that the district court did not err in denying this claim.

(Exh. 98 at 5-6.)

The state-court record reflects that Abeyta's trial counsel testified at the evidentiary hearing on Abeyta's state postconviction petition. (Exh. 74.) Counsel testified as follows: he reviewed Abeyta's presentence investigation report (PSI) with him. Abeyta was concerned that the PSI reflected that he had been charged with murder because the charge was eventually pled down to second-degree kidnapping. Counsel did not object because it was not inaccurate. *Id.* at 12. He made a tactical decision not to object to certain other potential inaccuracies in the PSI so as to de-emphasize Abeyta's lengthy criminal history. He chose to focus instead on Abeyta's significant participation in inmate programs while he had been in custody in this case. (*Id.* at 19-37.)

This Court agrees with respondents that because the PSI was accurate, Abeyta has failed to show that his counsel's failure to lodge objections constituted deficient performance or that Abeyta was prejudiced. As Abeyta has failed to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, ground 2 is denied. 28 U.S.C. § 2254(d).

## C.    Ground 3

Abeyta contends his counsel failed to communicate with him for over a year and failed to attend critical court dates (dkt. no. 8 at 19-22). He alleges that he did not have an opportunity to discuss any defense strategies.

The Nevada Supreme Court affirmed the denial of these claims, stating:

[A]ppellant claimed that trial counsel failed to adequately communicate with appellant. Appellant failed to demonstrate that he was prejudiced as he failed to demonstrate that further communication with counsel would have had a reasonable probability of altering his decision to enter a guilty plea in the instant case. In exchange for his guilty plea to one count of

attempted murder with the use of a deadly weapon, the State agreed not to pursue habitual criminal adjudication. Therefore, we conclude that the district court did not err in denying this claim.

[A]ppellant [also] claimed that trial counsel failed to show up to his preliminary hearing, arraignment, and a hearing on a motion in limine. Appellant failed to demonstrate that he was prejudiced. The record belies appellant's claim that his trial counsel was not present for his preliminary hearing. Appellant failed to demonstrate that there was a reasonable probability of a different outcome had his trial counsel appeared at the other hearings. Therefore, we conclude that the district court did not err in denying this claim.

(Exh. 98 at 3-4.)

As the state supreme court points out, the record belies Abeyta's claim that his trial counsel did not represent him at the preliminary hearing. (Exh. 4.) At the evidentiary hearing on the state postconviction petition, Abeyta's trial counsel testified that he visited the jail several times to meet with Abeyta, took his and his family members' calls and met with family members regarding his case. He also testified that he and Abeyta discussed specific defense strategies and that he was prepared to go to trial the day that Abeyta accepted a guilty plea agreement. Trial counsel also testified that he reviewed the guilty plea agreement with Abeyta in detail; his recollection was that they were in the empty courtroom with the empaneled jury outside. (Exh. 74.)

Abeyta has therefore failed to demonstrate that the Nevada Supreme Court's decision on federal ground 3 is contrary to, or involves an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground 3 is denied.

### D.   Ground 4

Abeyta claims that his counsel failed to object to prejudicial misstatements made by a victim impact speaker at sentencing (dkt. no. 8 at 26-28). The Nevada Supreme Court affirmed the denial of this claim, stating:

[A]ppellant claimed that trial counsel failed to challenge the victim's statement at sentencing on the grounds that the State failed to file a written notice and the victim made statements alluding to a prior encounter

1
2
3
4

> fifteen years earlier. Appellant failed to demonstrate that there was a reasonable probability of a different outcome at sentencing had trial counsel objected. In fact, at sentencing, trial counsel indicated that he anticipated the victim would make a statement and was prepared. Trial counsel further objected to the victim's discussion of the fifteen-year-old event. Therefore, we conclude that the district court did not err in denying this claim.

5

(Exh. 98 at. 6.)

6
7
8
9
10
11
12
13
14
15

The sentencing transcript reflects the Nevada Supreme Court's observations — that Abeyta's trial counsel informed the court that he had anticipated that the victim would make a statement and had prepared accordingly. (Exh. 33 at 3.) He also lodged an objection when the victim spoke about the incident fifteen years earlier, and the state district court then directed the victim that he could properly comment on how the incident in this case has impacted his life and his family. (*Id.* at 11-12.) The court had the record of Abeyta's extensive criminal history before it and specifically noted that its sentencing determination was influenced by the fact that the then-forty-one-year-old Abeyta's criminal history dated back to age sixteen and showed a propensity for violence and violence fueled by alcohol addiction. (*Id.* at 14-15.)

16
17
18
19
20

This Court concludes that Abeyta has failed to demonstrate that the Nevada Supreme Court's decision here is contrary to, or involves an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 4.

21

**E.    Ground 5**

22
23
24

Abeyta contends that his counsel failed to tell him that a life sentence was not mandatory (dkt. no. 8 at 31-34). The Nevada Supreme Court affirmed the denial of this claim, stating:

25
26
27
28

> [A]ppellant claimed that trial counsel coerced him into entering a guilty plea by informing him that he could get a life sentence when a life sentence was not mandatory in the instant case. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. During the evidentiary hearing, trial counsel and appellant acknowledged difficulties with their relationship. Trial counsel testified that the decision to enter a guilty plea was appellant's decision to make and

that he conveyed the plea offers made by the State. On the morning of trial, a plea offer was made, and trial counsel testified that he had an opportunity to discuss the offer with appellant and discuss any questions. Appellant, by virtue of his five prior felony convictions, was eligible for large habitual criminal treatment and a potential sentence of life imprisonment. NRS 207.010(1)(b). Candid advice about the potential outcome of trial is not deficient. In entering his plea, appellant acknowledged that it was freely entered and not the product of threats or coercion. Therefore, we conclude that the district court did not err in denying this claim.

(Exh. 98 at 5.)

As discussed by the Nevada Supreme Court, trial counsel testified at the state postconviction evidentiary hearing that he and Abeyta "had some ups and downs throughout the course of my representing him." (Exh. 74 a 9.) Trial counsel testified that Abeyta initially wanted to go to trial but that the final decision to enter into the guilty plea agreement was made by Abeyta. (*Id.*) Abeyta was set to be tried on two counts: attempted murder with use of a deadly weapon and battery with a deadly weapon causing substantial bodily harm. (Exh. 4 at 50.) In the guilty plea agreement that Abeyta ultimately accepted, he pleaded guilty to attempted murder with use of a deadly weapon. (Exh. 30.) Counsel testified that when they discussed that plea offer he told Abeyta that, in his opinion, if Abeyta was convicted at trial of both counts on the basis of having taken a knife and sliced the victim's throat, the state district court would sentence him under the large habitual criminal statute (with a potential life sentence). (Exh. 74 at 32.)

Counsel's candid advice about the potential outcome of trial is not deficient assistance. Thus,  Abeyta has failed to demonstrate that the Nevada Supreme Court's decision on federal ground 5 is contrary to, or involves an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground 5 is denied.

///

///

### F.    Ground 7

Abeyta asserts that, despite his requests, counsel failed to investigate, listen to, or transcribe calls that Abeyta placed from CCDC (dkt. no. 8 at 40-42). Abeyta also claims that some of the calls would have proven favorable to the defense because they would have shown that he did not intend to kill the victim. (*Id.* at 40.)

The Nevada Supreme Court affirmed the denial of this claim, stating:

> [A]ppellant claimed that trial counsel failed to challenge the validity of the intercepted phone calls made by appellant during his incarceration at the Clark County Detention Center.  Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant failed to demonstrate that any challenge would have led to the phone calls being deemed inadmissible. Therefore, we conclude that the district court did not err in denying this claim.
>
> . . .
>
> Conversely, appellant claimed that trial counsel should have attempted to introduce some of the phone calls to show that he had no intent to kill the victim. Appellant's protestations of innocence made during the phone calls would not have been admissible by themselves to prove he did not intend to kill the victim as they were inadmissible hearsay. NRS 51.035. Therefore, appellant failed to demonstrate that he was prejudiced by trial counsel's failure to seek introduction of these statements.

(Exh. 98 at 3 and n.3.)

The state-court record reflects the following.  Numerous telephone calls involving Abeyta were recorded at the CCDC and provided to the defense in discovery. (Exh. 20 at 7; Exh. 25.) On June 16, 2009, Abeyta's counsel filed a motion in limine seeking to exclude the phone calls as unduly prejudicial and arguing that they had not been verified or transcribed. (Exh. 20 at 8.) On September 11, 2009, the State opposed, arguing that the phone calls were admissible under Nevada law, identifying the witness who would verify them, explaining that it was in the process of transcribing all of the calls it intended to use, and offering to transcribe any others that the defense requested. (Exh. 25 at 3-4.) On September 15, 2009, the court held a hearing and denied the motion. (*See* Exh. 7 at 28 (state-court minutes).)

About one and one-half months later, on November 2, 2009, Abeyta entered his guilty plea. (Exh. 31.) The Court agrees with respondents that this procedural history

belies Abeyta's claim that his counsel made no efforts to investigate or preclude the admission of the recorded phone calls. Abeyta thus fails to demonstrate that his counsel's performance was deficient.

With respect to Abeyta's assertion that his counsel should have investigated the calls further because such investigation would have revealed that there were recorded phone calls that were favorable to the defense, Abeyta has not identified a single recorded phone call that would have proven that he was not guilty. Moreover, as the Nevada Supreme Court explained, even if there were phone calls that could have aided Abeyta in his defense, they would not have been inadmissible hearsay if offered by the defense. *See* NRS 51.035. Accordingly, Abeyta fails to demonstrate that, but for counsel's actions relating to the recorded calls, he would have chosen to proceed to trial rather than plead guilty.

Abeyta has not shown that the Nevada Supreme Court's decision on federal ground 7 is contrary to, or involves an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief on ground 7 is denied.

### G.    Ground 10

Finally, Abeyta claims that his sentence is cruel and unusual and violates due process and equal protection in violation of his Sixth, Eighth and Fourteenth Amendment rights because the trial court sentenced him to a consecutive term for the weapon enhancement when no weapon was ever introduced into evidence (dkt. no. 8 at 53-55). Abeyta also contends that the state district court was misled by inaccuracies in the PSI.

In affirming his convictions, the Nevada Supreme Court denied this claim, stating:

> This court will not disturb a district court's sentencing determination absent an abuse of discretion. *Randell v. State*, 109 Nev. 5, 8, 846 P.2d 278, 280 (1993). Abeyta has not demonstrated that the district court relied solely on impalpable or highly suspect evidence or alleged that the relevant sentencing statutes are unconstitutional. *See Denson v. State*,

112 Nev. 489, 492-93, 915 P.2d 284, 286-87 (1996); *see also Allred v. State*, 120 Nev. 410, 420, 92 P.3d 1246, 1253 (2004). Abeyta's sentence of two consecutive prison terms of 60-240 months falls within the parameters provided by the relevant statutes, NRS 200.030; NRS 193.330(1)(a)(1); NRS 193.165(1), and the sentence is not "so unreasonably disproportionate to the offense as to shock the conscience." *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979); *Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion). And when the victim referred to a prior bad act committed by Abeyta, defense counsel objected and the district court immediately admonished the victim, instructing him to only discuss how the incident impacted his life. The victim made no further reference to any prior bad act and, considering his extensive criminal history, Abeyta has failed to demonstrate that the district court based its sentencing decision on the victim's unsworn comment. *See Randell*, 109 Nev. at 7-8, 846 P.2d at 280 ("'[J]udges spend much of their professional lives separating the wheat from the chaff and have extensive experience in sentencing, along with the legal training necessary to determine an appropriate sentence.'" (quoting *People v. Mockel*, 276 Cal. Rptr. 559, 563 (Ct. App. 1990))). Therefore, we conclude that the district court did not abuse its discretion at sentencing and the sentence imposed does not constitute cruel and unusual punishment.

(Exh. 53 at 1-2.)

The Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime. *Solem v. Helm*, 463 U.S. 277, 286-287 (1983); *Rummel v. Estelle*, 445 U.S. 263, 271-273 (1980). Successful challenges to non-capital sentences on the basis of disproportionality are "exceedingly rare." *Rummel*, 445 U.S. at 272.

Abeyta was sentenced to two consecutive terms of five to twenty years for attempted murder with use of a deadly weapon. (Exh. 33.) The state district court imposed a lesser sentence than the State sought. (*Id.* at 4.) The court explained that it took Abeyta's twenty-five-year violent criminal history into account. (*Id.* at 14.) Finally, Abeyta does not challenge the constitutionality of the applicable sentencing statute, and the sentence was within the statutory limits. NRS § 193.330(1)(a)(1); NRS § 193.162.

Accordingly, Abeyta has not shown that the Nevada Supreme Court's decision on federal ground 10 is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an ///

1  unreasonable determination of the facts in light of the evidence presented in the state
2  court proceeding. 28 U.S.C. § 2254(d). Ground 10 is denied.

3        The petition, therefore, is denied in its entirety.

4  **IV.   CERTIFICATE OF APPEALABILITY**

5        This is a final order adverse to the petitioner. As such, Rule 11 of the Rules
6  Governing Section 2254 Cases requires this Court to issue or deny a certificate of
7  appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within
8  the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*
9  *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

10        Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner
11  "has made a substantial showing of the denial of a constitutional right." With respect to
12  claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists
13  would find the district court's assessment of the constitutional claims debatable or
14  wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463
15  U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable
16  jurists could debate (1) whether the petition states a valid claim of the denial of a
17  constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

18        Having reviewed its determinations and rulings in adjudicating Abeyta's petition,
19  the Court finds that none of those rulings meets the *Slack* standard. The Court therefore
20  declines to issue a certificate of appealability for its resolution of any of Abeyta's claims.

21  **V.   CONCLUSION**

22        It is therefore ordered that the petition (dkt. no. 8) is denied in its entirety.

23        It is further ordered that a certificate of appealability is denied.

24        It is further ordered that the Clerk shall enter judgment accordingly and close this
25  case.

26        DATED THIS 16th day of March 2016.

27  

28                                   MIRANDA M. DU
                                 UNITED STATES DISTRICT COURT